CRAVEN et al. v. SHOULTS et al.*

SHOULTS et al. v. CRAVEN et al.

Nos. 11089, 11093.

Circuit Court of Appeals, Eighth Circuit.

June 8, 1938.

*Rehearing denied July 15, 1938.

Robert G. Fuhrman, of Pender, Neb., for Nellie House Montgomery Craven et al.

John C. Mullen, of Falls City, Neb., and James H. Hanley, of Washington, D. C., for Alice House Shoults et al.

Before STONE, SANBORN, and BOOTH, Circuit Judges.

STONE, Circuit Judge.

This is an action in equity against the executor and trustee of the estate of John R. House and certain legatees who were the descendants entitled to distribution had there been no will, to have charged against the estate of House attorney fees for successfully resisting a contest of the will and for equitable remedy for enforcement. From a decree allowing recovery this appeal is brought. A cross-appeal was brought from that part of the decree as to the amount of recovery, seeking an increase therein. The plaintiffs and cross-appellants herein are the nieces, nephews and blood relatives of John R. House, deceased, who inherited under the will and through the trust created thereby.

December 26, 1926, John R. House died, leaving a will. According to this will the entire personal estate (with one exception) was divided equally between the wife and a daughter (an only child). One-half of the real estate was devised to the wife. The balance was devised in trust, the daughter to have the net income during her life; after her life, the estate to go to her direct heirs; if any; but if she died without such direct heirs, to "my heirs at law who are related to me by blood." After due notice, the will was probated without objection. The administration of the estate under the executor continued for about two years and a half. At the end of that time, according to the allegations of the petition, the daughter, mother and executor and the daughter's husband joined in a conspiracy to set aside the will. The motive inducing such action is alleged to have been the desire of the daughter to secure the fee of the trust estate for herself, she having then no direct heirs or possibility thereof. In accordance with this alleged conspiracy, the daughter filed a petition praying that the probate of the will be set aside on the ground of incompetency of the testator and of insufficient execution of the will and lack of notice of probate. This was unsuccessfully opposed by the plaintiffs herein and the order admitting the will to probate was set aside. Thereafter, the will was contested in the State trial court and was declared invalid. Plaintiffs appealed from the above decree and the case was carried to the Supreme Court of Nebraska, resulting in upholding the validity of the will (Craven v. Pinion, 129 Neb. 838, 263 N.W. 389).

While other matters are contained in the brief of appellants and while no waiver was made of any of them, the entire direct oral argument of appellants was directed to the basic question of merit in this case, which is the right of recovery from the estate of attorney fees incurred in the above situation.

1. Right of Recovery.

This is a matter of State law. We have examined all of the statutes and all of the decisions in Nebraska which seem to bear upon this matter.[1] We find it impos-

[1] Among the statutes and decisions examined are the following: Compiled Statutes of Nebraska, 1929, sections 30-215, 30-216, 30-230; In re Alexander's Estate, Neb., 274 N.W. 551; In re Charles' Estate, 123 Neb. 630, 243 N.W. 847; In re Genuchi's Estate, 104 Neb. 584, 178 N.W. 181; In re Merica's Estate, 99 Neb. 229, 155 N.W. 887; In re Creighton's Estate, 93 Neb. 90, 91, 139 N.W. 827; Everson v. Hurn, 89 Neb. 716, 131 N.W. 1130; Hazlett v. Moore's Estate, 89 Neb. 372, 131 N.W. 589; In re Hentges' Estate, 86 Neb. 75, 124 N.W.

sible to entirely reconcile the decisions. However, there seems to stand out from this uncertainty the principle that the allowance of attorney fees for a successful upholding of a will is a matter of the exercise of a sound discretion of the court, based upon the equities of the particular situation. This view seems to be supported by the cases of In re Hentges' Estate, 86 Neb. 75, 124 N.W. 929; Smullin v. Wharton, 83 Neb. 328, 119 N.W. 773, 121 N.W. 441; and In re Merica's Estate, 99 Neb. 229, 155 N.W. 887. A scanning of the evidence is rather convincing that the equities here strongly favor those who upheld the will. This will was admitted to probate February 28, 1927. The estate was administered, under the will, to a point where it was about ready to be closed. About that time (October, 1929), the daughter determined upon action to set aside the will. This action finally came into the Supreme Court of Nebraska where the will was sustained (Craven v. Pinion, 129 Neb. 838, 263 N.W. 389). The court below found there was a conspiracy, or, at least, a collusion between the daughter, husband, mother and one of the witnesses to the will to set aside the will. The trial court found that this plan was to be carried out by "fraud, perjury, misrepresentation and deceit." The executor, under the will, took no action to defend the will and refused to testify in the State court trial wherein the will was attacked. An examination of the testimony reveals no reason to set aside such findings.

## 2. Amount of Fees.

■ The cross-appeal is directed solely to the amount of fees allowed in the decree. The assignment of errors in the main appeal contains an assignment that "the amount of the decree entered by the court is unwarranted by the evidence, and is exorbitant and excessive." This assignment is not carried into the specification of errors in the brief of appellants. The specification contains the statement "inasmuch as nine of them [assignments of errors] relate to error in the finding of facts, and as this court will hear this case de novo, we are content here to urge and argue the following assignments of error only" (omitting this particular assignment). The cross-appeal presents the single issue that the allowance for fees was too small. In the answer brief in the cross-appeal, the excessiveness of the fee allowance is argued. In this state of the record here, we think the amount of the fee is open, both as to it being excessive and as to it being too low (Union Central Life Ins. Co. v. Imsland, 8 Cir., 91 F.2d 365, 368; Central Improvement Co. v. Cambria Steel Co., 8 Cir., 201 F. 811, 818, and see affirmance Kansas City Southern Ry. Co. v. Guardian Trust Co., 240 U.S. 166, 177, 36 S.Ct. 334, 60 L.Ed. 579; Hopkins v. Texas Co., 10 Cir., 62 F.2d 691, certiorari denied 290 U.S. 629, 54 S.Ct. 48, 78 L.Ed. 547.).

■ The allowance made by the court was for attorney fees of $17,500.00 and expenses of $1,679.75. There is no contest here as to the expense item. The dispute is as to the allowance of $17,500.00 for attorney fees. The theory of cross-appellants is that the amount of fees should be governed by the character and difficulty of the contest and the amount of property involved. They estimate the amount of property involved as being the value of the entire estate. Under the circumstances here, we think this is erroneous. The only parties interested in the disposition of this estate—either under the will or under the descent statute of Nebraska—are the wife, the daughter, the blood relatives of the testator, and a grain company to which the will gave stock therein owned by the testator. Under the descent statute (Comp.Stat. of Neb.1929, sections 30-101 and 30-103), all of this estate both real and personal (with exception of certain specific provisions for the widow, not here important) would have descended, in equal shares, to the widow and to the daughter. The will changed this only in respect to the bequest of one-half the real estate (going to the daughter) being placed in trust and in respect to the bequest of the shares of stock to the grain company (which would have descended one-half each to the widow and to the daughter). The value of the entire estate was more than $200,000.00.

929; In re Wilson's Estate, 83 Neb. 252, 119 N.W. 522; Smullin v. Wharton, 83 Neb. 328, 119 N.W. 773, 121 N.W. 441; Gund v. Ballard, 80 Neb. 385, 114 N.W. 420; In re Creighton's Estate, 76 Neb. 630, 110 N.W. 626; St. James Orphan Asylum v. McDonald, 76 Neb. 625, 107 N.W. 979, on rehearing, 76 Neb. 630, 110 N.W. 626; Atkinson v. May's Estate, 57 Neb. 137, 77 N.W. 343; Wallace v. Sheldon, 56 Neb. 55, 76 N.W. 418; Clark v. Turner, 50 Neb. 290, 69 N.W. 843, 38 L.R.A. 433; McClary v. Stull, 44 Neb. 175, 62 N.W. 501; Seebrock v. Fedawa, 33 Neb. 413, 50 N.W. 270, 29 Am.St.Rep. 488; Mathis v. Pitman, 32 Neb. 191, 49 N.W. 182.

302

The value of the land (at the death of testator) passing into the trust was about $106,000.00. The value of the grain stock is not estimated in the evidence. We do not mean to hold that the difference between the value of the entire estate and the value of the portion passing under the applicable law of descents is always the measure of the amount involved in a will contest litigation. Each case must be judged by its own circumstances and situation. We do think, under the circumstances here, this is a proper measure.

As to the character and difficulty of the litigation. In character it was an ordinary will contest. When we consider that the widow, the daughter, a witness to the will and (at least to an extent) the executor were hostile to the will, we conclude the litigation should be regarded as difficult from the standpoint of the non-resident proponents.

Two other related matters for consideration are that the counsel for proponents were Omaha lawyers accustomed to the fees proper in a city and that the will case arose and was tried in a rural community where the fees were much less. A reasonable fee (partially based upon an estate value of $275,000.00) was variously estimated by witnesses, who were Omaha lawyers, at $25,000.00, $27,000.00 and $35,000.00. These witnesses were unfamiliar with fees customarily charged in the county where the will litigation occurred. Witnesses, who were lawyers in that county (on the basis of the value involved being only that of the land in the trust estate), variously placed the fee at $3,000.00 and $3,750.00. A lawyer practicing in Lincoln, Nebraska (upon last above value basis), estimated the fee at $7,500.00.

Another consideration is that the services to be compensated by the fee were not in the trial court below. The trial judge made his estimation upon the same record we have before us. While he had the advantage of a familiarity with customary fees in Nebraska, which we lack, yet we think the fee allowed was too large. Giving consideration to the entire evidence, we think a proper fee is $7,500.00.

### Conclusion.

The results of the above opinion are that the case is remanded with instructions to amend the decree by reducing the allowance for attorney fees to $7,500.00 and, so amended, the decree is affirmed.