IN RE ESTATE OF FRANK M. GUNDERMAN.
AUBREY A. SMITH, APPELLANT, v. RAYMOND GUNDERMAN, APPELLEE.

FILED JUNE 15, 1918.    No. 20091.

1. **Executors:** RIGHT OF APPEAL. The executor named in the will offered for probate is a proper party proponent, and, if upon appeal to the district court by contestant the proposed will is denied probate, the executor may appeal to this court.

2. **Appeal:** ERRORS: REVIEW. Alleged errors not brought to the attention of the trial court in the motion for new trial will not ordinarily be considered in this court.

3. ———: WITHDRAWAL OF ADMISSION. An admission of fact by counsel in the trial of a cause may be withdrawn with consent of the court, and such consent and withdrawal will be presumed

In re Estate of Gunderman.

if the record shows that thereafter the parties fully tried the matter so supposed to have been conceded.

4. ———: VERDICT: SUFFICIENCY OF EVIDENCE: QUESTION FOR COURT. It is for the courts to determine whether there is such a failure of evidence to support the verdict that all reasonable minds must on consideration of the evidence alone conclude that it is clearly wrong. They are not called upon to say what their decision would be upon conflicting evidence if the law required them to determine upon which side of the question it preponderates.

5. ———: ———: ———. Upon the question whether the verdict of a jury can be sustained, the judges sometimes disagree, but this is no indication that they would disagree as to the preponderance of the evidence, if that question was submitted to them. We cannot find that the evidence is so clear and conclusive in this case as to require the court to interfere with the province of the jury.

6. Evidence: NONEXPERT WITNESS: MENTAL CAPACITY. "A nonexpert witness cannot give her opinion as to the mental capacity of testatrix unless such opinion is based solely on facts relating to the conduct and action of the testatrix as detailed in the evidence of the witness."

7. Appeal: OPINION OF NONEXPERT: HARMLESS ERROR. In contest of a proposed will, if it is alleged that the testator was intoxicated when the will was executed, and that it was procured by undue influence, the fact that a witness who was familiar with his condition at the time was allowed to state her opinion as to "whether he was competent or incompetent to transact important business" will not require a reversal, if it appears that the witness was testifying solely to his intoxication and his condition in that respect, and that the appellant was not prejudiced by the form of the question and answer.

8. Wills: PROBATE: MENTAL CAPACITY: INSTRUCTION. An instruction that, in determining whether the testator was of sound mind and had sufficient mental capacity to make a valid will, the jury may consider "the terms and provisions of the will itself, whether the same are just or unjust, reasonable or unreasonable, natural or unnatural," and similar matters indicated in the opinion, will not be held erroneous requiring a reversal, if the jury are plainly told that such matters will not alone warrant the presumption of mental incapacity, but should be considered as circumstances in connection with other facts bearing on the condition of the testator's mind.

APPEAL from the district court for Boone county: GEORGE H. THOMAS, JUDGE. *Affirmed.*

*A. M. Post* and *Frank D. Williams,* for appellant.

*Vail & Flory* and *A. E. Garten, contra.*

Sedgwick, J.

A writing, purporting to be the will of Frank M. Gunderman, deceased, was filed in the probate court of Boone county, and Aubrey A. Smith, who was named therein as executor, filed his petition in that court for the probate of the same as the will of Frank M. Gunderman. The probate was contested by Raymond Gunderman, a son of the deceased, and upon the hearing that court found that it was the will of Frank M. Gunderman and admitted it to probate as such. The contestant appealed to the district court for that county, and upon trial therein the jury found in favor of the contestant. From a judgment thereon the proponent, Smith, appealed to this court. A motion was filed in this court to dismiss the appeal on the ground that the appellant as executor had no appealable interest in the controversy. This court upon consideration overruled that motion.

The proponent quotes paragraphs 3 and 16 of the court's instructions to the jury and assigns error thereon. We do not find that any question as to these instructions was submitted to the trial court in the motion for new trial, and therefore these objections will not be further considered.

It is further contended that the only objection in the pleadings to the probate of the will was "general incompetency or mental derangement," and that therefore this judgment can be sustained only upon that ground; and it is further contended that upon the trial it was conceded by the contestant that the deceased was not generally incompetent. The conclusion in the brief seems to be that, as the only ground of contest alleged and relied upon was conceded not to exist, the judgment must be reversed for that reason. The record shows that counsel for contestant upon the trial asked a witness, "What would you say as to his being intoxicated fre-

quently, and about how often, during those later years?"
This question being objected to as "incompetent, irrele-
vant, and immaterial," contestant's counsel stated, "We
admit that at times this man was competent, but when he
was drinking he was incompetent." The court then
remarked, "If it is admitted that the man was mentally
capable when reasonably sober, and only when unreason-
ably drunk was he mentally incapable, then we might as
well confine ourselves to the immediate fact we have in
hand at the time of the execution of the will." Where-
upon counsel for contestant said, "Now, we will take
just a moment for consultation." The court thereafter
remarked, "We will proceed on the theory that he was
mentally incapable to transact business." Thus, it ap-
pears that the contestant's counsel had made an admis-
sion, which, when his attention was called by the court
to the full effect of it, he desired to qualify, and asked
for time to consider it. What the result of his consider-
ing the matter was is not shown from the record, un-
less we infer it from the remark of the court. This
language of the court in regard to the theory on which
they would proceed is perhaps a little indefinite, but it
must mean that they would proceed on the theory that
the question was whether he was generally incompetent,
and the subsequent evidence shows beyond question that
that was the theory upon which the trial proceeded.

The original brief of the proponent is devoted almost
entirely to a discussion of the sufficiency of the evidence
to support the finding of the jury. The contestant, Ray-
mond Gunderman, is the only child of the deceased, and
it appears that when this child was quite young the de-
ceased was divorced from his wife, and the care and
custody of the boy was given to the wife, whose residence
was so far from that of the deceased that there was little
intercourse between the father and son for several years.
The son, however, visited his father on several occasions,
and when the father supposed that he was about to die

102 Neb.—38

he sent for the son, who promptly came to his father and assisted him as he could. The deceased had no other relative in whom he was interested except a sister, who had cared for the deceased in his youth. By the proposed will, the property of the deceased was substantially given to this sister, who was in poor circumstances, and the son was practically disinherited. There are circumstances, shown in the evidence, indicating a strong attachment on the part of the deceased for this sister, and also indicating to some extent a disregard for the son. On the other hand, there are circumstances indicating exactly the reverse. The courts are not called upon to say what their decision would be upon this conflicting evidence, if the law required them to determine upon which side of the question it preponderates. It is for the courts to determine whether there is such a failure of evidence to support the verdict that all reasonable minds must on consideration of the evidence alone conclude that it is clearly wrong. Upon the question whether the verdict of a jury can be sustained, the judges sometimes disagree, but that is no indication that they would disagree as to the preponderance of the evidence, if that question was submitted to them. We cannot find that the evidence is so clear and conclusive in this case as to require the court to interfere with the province of the jury.

A serious question is presented by the objection that "It was error to receive opinion of witness Minnie Burns touching competency of deceased." That witness was asked the question, "Mrs. Burns, basing your opinion on your knowledge and acquaintance with Frank M. Gunderman, what would you say as to whether he was competent or incompetent to transact important business on the morning of the 22d day of September, 1914, at the time this will was written?" which was objected to as incompetent, irrelevant, and immaterial, and no proper foundation laid. The objection was overruled, and the answer was, "I don't think he was competent. He

realized that fact himself.'' Upon motion, the last part of the answer, ''He realized that fact himself,'' was stricken out as not responsive to the question. The rule that ''A nonexpert witness cannot give her opinion as to the mental capacity of testatrix unless such opinion is based solely on facts relating to the conduct and action of the testatrix as detailed in the evidence of the witness'' is almost, if not quite, universally applied in such cases. *Furlong v. Carraher*, 102 Ia. 358. This, of course, relates to the mental capacity to make a will, which is generally the issue presented. In the case at bar the objections to the will alleged the mental incapacity to make a will, and also alleged the continual use of intoxicating liquors to the very time of executing the proposed will as a cause of such incompetence; and also that the will was obtained by undue influence. This witness had been his nurse for several years, and had ample opportunity to know his drinking habits, and especially his condition in that regard at the time of making the will. She testified at large as to his habits of intoxication for the several years immediately prior to the execution of the will, and then fully in regard to his condition in that respect when the will was made. Ordinarily, where the question is as to his general incompetency mentally to make a will, such question upon that issue would be held to be incompetent. One may be competent mentally to make a will, and yet not be in a condition to transact important business generally. This question could only be considered proper upon the theory that it was understood by all parties to relate to the degree of intoxication of the testator at the time the will was made.

From an examination of the evidence of this witness and the objections interposed and rulings of the court thereon, it does not seem so clear that the answer to the question objected to was understood by any one to be an opinion upon the issue presented to the jury, as to require a reversal. It seems rather to have been considered as showing the extent of his indulgence in intoxicating

liquors, and that at the making of the will there was opportunity for undue influence. Under these circumstances, and in the light of the general instructions given the jury as to the evidence to be considered by them in determining the issue submitted, we cannot find that the evidence was prejudicial to the appellant.

The court instructed the jury that, in determining whether the testator was "a man of sound mind and had sufficient mental capacity to make a valid will, you may take into consideration the terms and provisions of the will itself, whether the same are just or unjust, reasonable or unreasonable, natural or unnatural, and you may take into consideration the evidence as disclosed to you upon the trial relating to the financial condition of the contestant, the only son of said testator, and the financial condition of the other devisee under said will at the time of the execution of said instrument." It is contended that this was erroneous, and *Donnan v. Donnan,* 236 Ill. 341, is cited. The instruction criticised in that case told the jury that "inequality and unreasonableness in a testamentary disposition of property, though not, in itself, conclusive evidence of unsoundness of mind or of undue influence, may be considered," etc. The court thought that the use of the word "conclusive" implied that such evidence "alone is to be considered as evidence tending to show unsoundness of mind or undue influence," and, for that and similar reasons, held that the instruction was erroneous. In the instruction here complained of the court told the jury "the apparent inequality or inequity in the provisions of the will do not alone warrant the presumption of mental incapacity, but they may and should be considered as circumstances in connection with other facts bearing on the condition of the testator's mind at the time of executing the will."

There being no such substantial error as requires a reversal, the judgment is

AFFIRMED.

Rose and Hamer, JJ., not sitting.